UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | :  Case No. 25-MJ-148-MAU |
| NATHALIE ROSE JONES, | : |
| | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S APPEAL OF DETENTION ORDER**

Defendant asks this Court to reconsider the Honorable Moxila A. Upadhyaya's August 21, 2025, Order of Detention. *See generally* (ECF No. 11). In support of the requested relief, Defendant argues that: (i) the charged threats do not amount to "true threats" under the First Amendment of the United States Constitution; (ii) she is not a danger to others; and (iii) she is not a risk of flight. *Id*.

The United States respectfully requests that the Court affirm the magistrate judge's detention decision. First, Defendant's threatening statements towards the President of the United States ("POTUS") constitute "true threats." Second, Defendant is a clear danger to others in the community, as exemplified by her persistent threats made: (i) over the phone; (ii) over email; (iii) on social media; and (iv) in person to law enforcement. Finally, it is more likely than not that Defendant will fail to appear as required if she is released pending trial.

**RELEVANT PROCEDURAL BACKGROUND**

On August 21, 2025, a detention hearing was held before the Honorable Moxila A. Upadhyaya. In its motion for detention, the United States argued that Defendant was eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A) (crime of violence) and (2)(A) (serious risk of flight). *See generally* (ECF No. 7). The United States further argued that Defendant should

be detained because she is both a danger to the community and a risk of flight. *Id*. at 1.

After the parties argued their respective cases, the magistrate judge ordered Defendant detained. In her decision, the Honorable Moxila A. Upadhyaya made the following findings:

- Defendant's threats were not "satire," "conditional," or "hyperbolic";
- Defendant met with the United States Secret Service, which was not an "inconsequential event." Nevertheless, on or about August 15, 2025, Defendant proceeded to travel to Washington, DC, after previously telling law enforcement that she was going to kill the POTUS;
- The weight of the evidence against Defendant was strong given that, among other things, Defendant made her threats publicly, over the phone, and to law enforcement.
- Defendant does not appear to care about the consequences of her actions;
- It was significant that there was a temporal proximity between Defendant's threats and her travel to Washington, DC; and
- The proposed conditions offered by opposing counsel were not sufficient to protect the community or prevent her non-appearance.

## **ARGUMENT**

The Court should deny Defendant's appeal. To begin, Defendant's threatening statements constitute "true threats," and her criminal conduct is not protected by the First Amendment.[1] The United States Supreme Court defined "true threats" as "those statements where the speaker means to communicate a serious expression of intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2007). Notably, the Supreme Court further emphasized that the "speaker need not actually intend to carry out the threat," because "the prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur." *Id*. at. 360; *see also United States v. Syring*, 522 F.Supp.2d 125, 129 (D.D.C. 2007).

---

[1] While Defendant spends considerable time litigating this issue in her appeal, the question of whether Defendant's threats constitute "true threats" is only relevant insofar as it relates to the "weight of the evidence" factor contained in 18 U.S.C. § 3142(g). Nevertheless, the United States addresses this point for the Court's consideration.

Courts determining whether communications constitute true threats have generally applied an objective standard. *Syring*, 522 F.Supp.2d at 129. The relevant inquiry is whether a reasonable person would consider the statement a serious expression of an intent to inflict harm. *Id.* Moreover, in considering whether a communication is a true threat, the court should "consider context, including the effect of an allegedly threatening statement on the listener." *Id*. at 130 (citing *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists,* 290 F.3d 1058, 1074–75 n. 7 (9th Cir. 2002)).

Applying this legal framework to the facts at hand, one can quickly see that Defendant's threatening statements are "true threats" under the law. As detailed in the United States's Motion for Detention, Defendant threatened to kill and physically injure the POTUS on several occasions. (ECF No. 7 at 1-13). This includes Defendant's:

- June 17, 2020, phone call, to the Office of the Director of National Intelligence's Public Affairs Hotline, whereby Defendant stated, among other things, that "[she] should just kill [POTUS] because he is racist."

- August 6, 2025, Facebook post, which stated, among other things, "I am willing to sacrificially kill this POTUS by disemboweling him and cutting out his trachea[.]"

- August 13, 2025, Facebook post, which directed the Central Intelligence Agency to, among other things, "find him and drag his ass out and fuck him up infinity."

- August 14, 2025, email, which stated, among other things, "I am available to kill this man . . . by disemboweling him and cutting out his trachea[.]"

- August 14, 2025, report by N.G. that N.G. received an email from Defendant threating to "disembowel" the POTUS.

- August 15, 2025, interview, whereby Defendant stated, among other things, that: (i) if she had the opportunity, she would take the POTUS's life; (ii) she would "kill him out at the compound" if she had to; and (iii) if she had access to a knife or bladed object, she would use the items to carry out her mission of killing the POTUS.

A reasonable person would consider these persistent and continual threats as serious expressions of an intent to inflict harm, and not as mere political hyperbole or satire. This is proven by the fact that: (i) civilians and individuals in the law enforcement community reported Defendant's threatening statements to the United States Secret Service; (ii) the threatening statements were not conditional in nature; and (iii) Defendant travelled to Washington, DC, right after telling members of law enforcement that she wanted to kill the POTUS. *See Syring*, 522 F.Supp.2d at 130 (noting that, in the context of the court's "true threat" analysis, it should consider, among other things, the reaction of the recipient of the threat and of other listeners and whether the threats were conditional). The charged statements show a clear and deliberate intent to commit acts of unlawful violence and should be treated as such.

In addition to Defendant's argument that her comments did not amount to "true threats," she also contends that she is not a danger to the community. This could not be farther from the truth. Defendant is the exact type of person that should be detained pending trial. She displays a penchant for violence, as displayed through her threats towards the POTUS. She does not care about the consequences of her statements and actions, as shown by her brazen decision to drive to Washington, DC, the day after telling law enforcement she would take the POTUS's life. And she has mental health issues, which could affect her ability to exhibit self-control or cause her to discount the dangerousness of her actions going forward.[2]

Defendant also poses a serious risk of flight. While Defendant has contacts to New York

---

[2] In addition to Defendant's threatening statements, she has also made several ominous comments indicating that she does not value human life. These include that: (i) she did not want to have a "war on the white house lawn" but needed to press forward; (ii) she needed to contain her "blood lust"' (iii) it might be necessary to "die" for the country or "die for freedom" at "dupont circle at 2pm"; and (iv) she may "die an unnecessary death" while in Washington, DC.

and Indiana, she has absolutely no connection to the Washington, DC, area. Given that Defendant is not worried about the repercussions of her actions, she will not be concerned about failing to return to Court if released. These issues are only exacerbated by her mental health struggles, which, while unfortunate, must be considered in this context as well.

## CONCLUSION

There is no condition or combination of conditions that would ensure Defendant's compliance with court-ordered release conditions. As Defendant's offense conduct makes clear, she is a danger to the community, and she poses a serious risk of flight. For all the foregoing reasons, the United States respectfully requests the Court affirm the magistrate's detention order detain Defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:     */s/ Joshua Satter*
        Joshua Satter
        Assistant United States Attorney
        NY Bar No. 5477112
        601 D Street NW
        Washington, DC 20579
        (202) 252-7566
        Josh.Satter@usdoj.gov